# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# (TAMPA DIVISION)

NAKIAH ALVARADO,
INDIVIDUALLY AND ON BEHALF
OF ALL OTHERS SIMILARLY
SITUATED,                                    Case No: 8:23-cv-02592-SDM-SPF

             Plaintiff,

vs.

WALMART INC.,

_____Defendant._____/

## WALMART INC.'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

Defendant Walmart Inc. ("Walmart") respectfully submits this Motion to Dismiss the Class Action Complaint [D.E. 1] ("Complaint") filed by Plaintiff Nakiah Alvarado ("Plaintiff") and incorporated Memorandum of Law, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## I.   INTRODUCTION

As one court aptly described it, "[b]y the look of things, attorney Sheehan is filing consumer fraud cases over and over again, seemingly covering just about every aisle in the grocery store, without much success."[1] *See Taylor v. Proctor & Gamble Co.,*

---

[1] Plaintiff's other attorney of record, William Wright, has acted as Sheehan's proxy in Florida, filing fifty-two cases in Florida District Courts on Sheehan's behalf in just over two years. Sheehan also fails to properly submit *pro hac vice* applications in cases filed outside of New York. In *Fields v. Walmart, Inc.*, another case originally filed by Sheehan in the Middle District of Florida, Judge Barber entered an order requiring Sheehan to file a motion to appear *pro hac vice* by January 23, 2024, noting "[i]t does not appear that Spencer I. Sheehan is permitted to practice in the Middle District of Florida." No. 23-cv-02057 (M.D. Fla. Jan. 16, 2024), D.E. 13. When Sheehan failed to file this motion, Judge Barber terminated Sheehan as an attorney of record. *Id.*, D.E. 16.

No. 22-cv-1949, 2023 WL 5289451, at *7 (S.D. Ill. Aug. 17, 2023) (citation omitted).

More recently, in dismissing another Sheehan lawsuit, another court stated:

> courts around the country have been inundated with a seemingly endless
> supply of trivial (bordering on frivolous) lawsuits, asking the courts to
> read the labels of consumer goods in manners that strain credulity or to
> simply ignore other relevant language provided on the labels. [This case]
> is one of many that should give pause to Mr. Sheehan and serve as a
> reminder that **CONTEXT MATTERS** and that a label should be read in
> its entirety.

*Adeghe et al. v. Procter & Gamble Co.*, No. 22-cv-10025, 2024 WL 22061, at *9 (S.D.N.Y

Jan. 2, 2024) (citation omitted). This action—one of nearly 575 consumer class action

cases filed nationwide by Plaintiff's counsel, Spencer Sheehan, in just the past three

years for alleged misleading product labels—is the latest against Walmart.[2]

Walmart markets and sells sunscreen labeled "Reef Friendly" on the front

packaging (the "Product"). Compl. ¶ 28. The front packaging also states that the

Product is "Octinoxate, Oxybenzone & Paraben Free." *Id.* ¶ 29. The ingredient list on

the back packaging accurately discloses both the active ingredients—"Avobenzone

(3.0%), Homosalate (10.0%), Octisalate (5.0%), [and] Octocrylene (4.0%)"—and non-

active ingredients. *Id.* ¶¶ 38-39.

---

[2] Courts have routinely dismissed Sheehan's claims against Walmart for lack of standing or failure to
state a claim. *See Wertymer v. Walmart, Inc.*, No. 23-cv-14700 (N.D. Ill. Feb. 22, 2024), D.E. 22; *Vazquez
v. Walmart, Inc.*, No. 22-cv-06215, 2023 WL 8257999 (S.D.N.Y. Nov. 29, 2023); *Wright v. Walmart,
Inc.*, No. 22-cv-02311, 2023 WL 5348861 (S.D. Ill. Aug. 21, 2023); *Guzman v. Walmart, Inc.*, No. 22-
cv-3465, 2023 WL 4535903, at *1 (N.D. Ill. May 15, 2023) (dismissing consumer class action, stating:
"[t]he shelf life of the complaint has long since expired. . . . Plaintiff's counsel has peddled this theory
time and again, . . . without much success in this district."); *DeMaso v. Walmart, Inc.*, 655 F. Supp. 3d
696 (N.D. Ill. 2023). Some have been voluntarily dismissed. *See, e.g., Knautz v. Walmart, Inc.*, No. 22-
cv-50236 (N.D. Ill.), D.E. 34-35 (voluntarily dismissed after court set an evidentiary hearing to address
Walmart's lack of standing argument, in which the Court stated that "[Plaintiff's] response to
Defendant's standing arguments is thinner than rice paper").

Plaintiff allegedly purchased an undetermined quantity of the Product during a four-year period at undetermined location(s). Plaintiff does not state that she did not like the Product, that it caused health problems, or that it in fact did harm coral reefs—or even that she used the Product near a coral reef. Instead, she takes issue with the inclusion of avobenzone, homosalate, octisalate, and octocrylene, which she contends makes the "reef friendly" label false and misleading. *Id.* ¶ 41.

These claims are baseless. The phrase "reef friendly" clearly has an asterisk immediately after it, directing the consumer to look at the back of the sunscreen packaging for the definition of "reef friendly." That definition—"Formula is compliant with HI SB2571"—is clearly and conspicuously provided. No alleged facts suggest that, with such labeling, the inclusion of avobenzone, homosalate, octisalate, and octocrylene is improper. Simply put, the Product's packaging is not misleading.

Nevertheless, based on the inclusion of four ingredients, Plaintiff concludes, without support, that she paid a premium price for the $4.88 Product, which would otherwise cost less. Compl. ¶ 50. Instead of seeking a refund from Walmart pursuant to the express guarantee on the Product's packaging, Plaintiff elected to file a putative class action alleging, without support, claims for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), false and misleading advertising under Section 817.41, Florida Statutes, and fraud. Even if these claims were not deficient, Plaintiff lacks standing. Thus, as many courts have done with Sheehan's similar actions, the Court should dismiss the Complaint.

## II.     FACTUAL ALLEGATIONS IN THE COMPLAINT

Plaintiff alleges that the Product is unfairly and deceptively labeled because it is labeled "reef friendly" when it contains the active ingredients of avobenzone, homosalate, octisalate, and octocrylene which are "harmful to coral reefs." Compl. ¶¶ 41-42. Yet, Plaintiff disregards the label's express disclosure of the active ingredients and that "reef friendly" means "Formula is compliant with HI SB2571." *Id.* ¶¶ 29, 38-39, contradicting Plaintiff's assertion that the Product is deceptively labeled.

### A. Deceptive Packaging Allegations.

The Complaint states that, generally, consumers have a "growing . . . awareness of the harm caused to [coral reefs]." *Id.* ¶ 28. Citing a series of articles and anecdotes, the Complaint asserts that avobenzone, homosalate, octisalate, and octocrylene are harmful to coral reefs. *Id.* ¶¶ 30-37.[3]

Plaintiff contends "labeling of the Product as 'Reef Friendly' even though its [ingredients] are harmful to coral reefs results in its 'misbranding,' because it misleads consumers." *Id.* ¶ 49. Under the Federal Food, Drug and Cosmetic Act ("FFDCA"), the Florida Drug and Cosmetic Act ("DCA"), and Florida law, a product is "misbranded" "[i]f its labeling is in any way false or misleading." *Id.* ¶¶ 46-48.

Plaintiff's concept of being "unfriendly" to coral reefs is made up out of thin air. The label "Reef Friendly" is on the front of the packaging. *Id.* ¶ 28. The ingredient list

---

[3] Plaintiff also alleges that Walmart "conducted or relied on research about consumer purchasing habits and knew almost all consumers value protecting the environment and would pay more for such products," Compl. ¶ 126, but no specific study is mentioned, cited to, or attached in support.

on the back of the packaging states the Product contains avobenzone, homosalate, octisalate, and octocrylene, and that "reef friendly" means "Formula is compliant with HI SB2571."[4] *Id.* ¶¶ 29, 38-39. The back of the packaging also states "satisfaction guaranteed" and provides a number to call with questions or comments.[5] *Id.* ¶ 38; *see also* **Exhibit A** (Product label).[6] According to Plaintiff, this Product is not reef friendly because it contains ingredients that "have been linked to coral bleaching and harm to coral reefs."[7] *Id.* ¶ 35. But, besides mere speculation, the Complaint alleges no facts that any of the label contents are improper. Plaintiff then concludes the Product's price is "higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions." *Id.* ¶ 50.

### B. Plaintiff's Purported Purchases.

Plaintiff alleges that she bought "the Product between October 2019 and October 2023, at Walmart locations in Hillsborough County, and/or other areas." *Id.*

---

[4] Although Plaintiff alleges that this asterisk directs the customer to the front of the packaging where it says "Octinoxate, Oxybenzone, and Paraben Free," the asterisk in fact directs the consumer to the back of the packaging.  Regardless, the two statements—"Octinoxate, Oxybenzone, and Paraben Free" and "Formula is compliant with HI SB2571"—are consistent.  *See* Section IV.C.2, *infra*.

[5] In addition, the money-back guarantee is also located on Walmart's website, *see* "Returns," *Walmart*, https://www.walmart.com/cp/returns/1231920 (last visited March 29, 2024), and the Court may take judicial notice of Walmart's website.  *See Barron v. Snyder's-Lance, Inc.*, No. 13–62496–CIV, 2015 WL 11182066, at *4 (S.D. Fla. Mar. 20, 2015).

[6] Although Plaintiff includes the label in her Complaint, *see* Compl. ¶¶ 28, 38-39, the label is unclear and difficult to read. Because the label is explicitly referenced in the Complaint, the Court may take judicial notice of Walmart's Exhibit A, containing clearer images of the label. *See Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1371 n. 1 (S.D. Fla. 2015) (taking judicial notice in a false and misleading advertising of seventeen product labels that were central to Plaintiff's claim and their authenticity was not challenged); *Merl v. Warner Bros. Entm't Inc.*, No. 1:12–CV–20870, 2013 WL 266049, at *1 n. 5 (S.D. Fla. Jan. 23, 2013) (similar).

[7] Although Plaintiff references "independent studies," "watchdog groups," "non-profits," and "scientists" that support her position, Plaintiff fails to directly cite to or attach specific studies or reports. *See* Compl. ¶¶ 24-25, 30, 35-37.

¶ 88. She purchased the Product "at or exceeding [\$4.88 for 5.5 oz (156 g)]." *Id.* ¶¶ 50, 90. Plaintiff claims that, "[a]s a citizen of Florida, Plaintiff is aware of how coral reefs are incredible environments and should be protected," and she "seeks to purchase products which have a reduced environmental impact relative to other products." *Id.* ¶¶ 86-87. When purchasing the Product, Plaintiff allegedly "relied on the front label which said 'reef friendly,'" which was "reasonable" because "companies like Defendant know consumers are increasingly seeking products which promote their environmental attributes."[8] *Id.* ¶¶ 82, 118. Because the Product contained avobenzone, homosalate, octisalate, and octocrylene, Plaintiff assumes she "paid more for the Product than she would have had she known it was not 'Reef Friendly,' as she would not have bought it or would have paid less." *Id.* ¶ 91.

## III.   LEGAL STANDARDS

### A. Rule 12(b)(1)

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III[,] which the party invoking federal jurisdiction has the burden of proving." *BBX Cap. v. Fed. Deposit Ins. Corp.*, 956 F.3d 1304, 1312 (11th Cir. 2020) (quotation omitted). "[T]o meet the requirements of Article III standing, a plaintiff must establish that he has suffered an injury in fact, that the injury was causally connected to the defendant's actions, and that the injury would be redressed by a judgment in the plaintiff's favor." *Lamb v. Charlotte Cty.*, 429 F. Supp. 2d 1302,

---

[8] Plaintiff alleges the Equate brand has an industry-wide reputation for high quality and those products generate high profits for Walmart, without any support. Compl. ¶¶ 70-80.

1307 (M.D. Fla. 2006). An injury in fact requires "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations and quotation marks omitted). Plaintiffs who do not allege an injury in fact lack standing to pursue claims. *Id.* at 578.

### B. Rule 12(b)(6)

A motion to dismiss should be granted if plaintiff is unable to articulate "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" and rise above speculation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). On such motion, the "court accepts the factual allegations in the complaint as true and construes them in a light most favorable to the non-moving party." *Jones v. Coors Brewing Co.*, 378 F. Supp. 3d 1132, 1134 (M.D. Fla. 2019). However, "'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* at 1134 (citation omitted). This requires that legal conclusions be supported by factual allegations. *Daleo v. McCray*, No. 11-CV-2521, 2012 WL 6733091, at *2 (M.D. Fla. Dec. 28, 2012).[9]

---

[9] Plaintiff only incorporates paragraphs 1-34 into each claim, failing to incorporate other general allegations about Plaintiff's purchases. Thus, the claims wholly lack factual allegations, as well as have conclusory allegations and threadbare recitals of elements that are insufficient to state any claim.

## IV.   ARGUMENT

### A.  Plaintiff's Claims Should Be Dismissed for Lack of Standing.

As a threshold matter, Plaintiff lacks Article III standing to bring her claim for two reasons: (1) Walmart offered a money-back guarantee on the Product, and (2) Plaintiff's conclusory allegations of a "premium price" are insufficient.[10]

### 1.  Walmart's Money Back Guarantee Moots Plaintiff's Injury.

Plaintiff failed to allege any cognizable injury in fact because Walmart offered a money-back guarantee. In *Valiente v. Publix Super Mkts., Inc.*, the court dismissed a similar Sheehan class action for lack of standing where the plaintiff alleged Publix's cough drop packaging was misleading. No. 22-22930-Civ, 2023 WL 3620538, at *1 (S.D. Fla. May 24, 2023). Publix, however, provided a money-back guarantee disclosed on the back of the package, which plaintiff failed to address, and the court found his injury was "mooted by Publix's money-back guarantee." *Id.* at *3.

Here, Walmart explicitly offered a money-back guarantee as stated on the Product packaging and on Walmart's website. *See* Ex. A. Plaintiff's only claimed injury is overpaying for the Product. *Id.* ¶¶ 50, 92. Wholly failing to address the money-

---

10 Plaintiff states that the Product she purchased was in a spray bottle, Compl. ¶ 28, and cost approximately $4.88 for 5.5 oz (156 g), *id.* ¶ 50. However, Walmart sells and markets other sunscreens also labeled "Reef Friendly." To the extent that Plaintiff tries to assert claims regarding all Equate brand sunscreens labeled "Reef Friendly," Plaintiff can only bring claims regarding Products she in fact purchased and lacks standing as to other products. *Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1373 (S.D. Fla. 2015). Further, Walmart changed its labeling, removing the "Reef Friendly" language in 2022 and replacing it with "NO Oxybenzone NO Octinoxate." To the extent Plaintiff alleges that she purchased the Product after this change, Plaintiff cannot bring claims for items without the "Reef Friendly" labeling.  *See* **Exhibit B** (product label after 2022 change).

back guarantee, Plaintiff does not say, for example, that she attempted to return the Product but Walmart refused to abide by the money-back guarantee. Accordingly, any alleged injury is not concrete and actual or imminent, as she could have requested and received a refund and been made whole, eliminating any purported injury all together. At best, Plaintiff's injury is hypothetical, which fails to establish an injury in fact sufficient for Article III standing. *See Lujan*, 504 U.S. at 560. Because Walmart's money-back guarantee moots Plaintiff's injury, the Complaint should be dismissed. *See Valiente*, 2023 WL 3620538, at *3; *Hardy v. Bed Bath & Beyond, Inc.*, No. 17-22315-CIV, 2018 WL 1272687, at *2 (S.D. Fla. Mar. 9, 2018) (similar).

### 2. Plaintiff's Allegations Do Not Support an Injury In Fact.

A conclusory allegation that a plaintiff paid "a premium price" is, by itself, insufficient to support an injury in fact. *See Ramirez v. Kraft Heinz Foods Co.*, No. 22-CV-23782, 2023 WL 4788012, at *4 (S.D. Fla. July 27, 2023) (complaint failed to allege injury in fact where it lacked factual allegations of price without alleged deceptive marketing). In *Valiente,* the court also found that plaintiff lacked standing under a "premium price" theory. 2023 WL 3620538, at *3. There, plaintiff alleged that he purchased cough drops, "apparently attracted by the phrase 'honey-lemon,' [and] the 'pictures of these ingredients.'" *Id.* at *1. The labels were purportedly misleading because they suggested the product contained "a non-*de minimis* amount of lemon ingredients" even though the product's ingredient list did "not list any lemon ingredient." *Id.* Plaintiff claimed that Publix could "sell the product at the 'premium

price'" because of the "misleading representations and omissions." *Id.* Thus, plaintiff's "only alleged injury [was] that had he . . . known the truth, [he] would not have bought the product or would have paid less for it." *Id.* at *3 (cleaned up).

The *Valiente* Court found these allegations did not satisfy Article III standing. Without alleging the product was "defective. . . or otherwise [was] so flawed as to render [it] worthless," plaintiff failed to "concretely tie the value of the cough drops to [the] purported representations." *Id.* at *5. And, "general allegations that consumers . . . may understand Publix's representations in a way that allow it to sell the cough drops at a premium price" did not support that the cough drops were sold at a "premium price" due to the misrepresentations. *Id.* Thus, plaintiff's injury was his "subjective, personal expectations" of the cough drops, and "a plaintiff does not have standing to sue a defendant merely because of his or her buyer's remorse." *Id.* (citation omitted).

Here, Plaintiff's injury relies on a near-identical allegation as in *Valiente*: that she "paid more for the Product than she would have had she known it was not 'Reef Friendly,' as she would not have bought it or would have paid less." Compl. ¶ 91. However, Plaintiff fails to allege why the Product was worth less than the stated price due to the alleged misrepresentation. Aside from the conclusory allegation that the $4.88 Product was "sold at a premium price," *id.* ¶ 50, Plaintiff fails to mention, for example, any facts about the price the Product would be if it was not purportedly misrepresented, the price of other similar products, or concretely tie the value of the Product to the alleged misrepresentation. Instead, Plaintiff appears to rely on a series

of articles and anecdotes stating that: (1) coral reefs are in danger, (2) certain chemicals in some sunscreens are harmful to coral reefs, and (3) consumers are aware of the danger to coral reefs. *Id.* ¶¶ 17-37. None of these purported sources mention the Equate brand, let alone the Product at issue here, nor does Plaintiff attach or sufficiently incorporate these sources. Further, none of the sources discuss how a "Reef Friendly" label impacts sunscreen prices, either generally or with regards to this specific Product. In short, Plaintiff's "*general* allegations that consumers like [her]self may understand [Walmart's] representations in a way that allow it to sell the [Product] at a premium price" also fail to allege "an economic injury in fact based on [her] purchase of the [Product], and [she] therefore lacks standing." *Valiente*, 2023 WL 3620538, at *5.

## B. Rule 9(b) Requires Dismissal of Plaintiff's Fraud-Based Claims.

Plaintiff's FDUTPA (Count I), false and misleading advertising (Count II), and fraud (Count III) claims lack requisite particularity and should be dismissed.[11]

Under Rule 9(b), a party "alleging fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake." *Dixon v. Allergan USA, Inc.*, No. CV 14-61091-CIV, 2015 WL 12915671, at *3 (S.D. Fla. May 28, 2015) (citing Rule 9(b)). "This Rule serves an important purpose in fraud actions by alerting

---

[11] Rule 9(b) applies to these claims because they sound in fraud. *See Llado-Carreno v. Guidant Corp.*, No. 09-20971-CIV, 2011 WL 705403, at *5 (S.D. Fla. Feb. 22, 2011) (FDUTPA); *Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd.*, No. 10-22153-CIV, 2011 WL 4434891, at *5 (S.D. Fla. Sept. 23, 2011) (false and misleading advertising); *Cutler v. Voya Fin., Inc.*, No. 18-20723-CIV, 2019 WL 1112379, at *2 (S.D. Fla. Jan. 15, 2019), *report and recommendation adopted*, No. 18-CV-20723, 2019 WL 1115885 (S.D. Fla. Feb. 5, 2019) (fraud).

defendants to the precise misconduct with which they are charged." *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370-71 (11th Cir. 1997) (internal quotations and citations omitted). "The Rule's particularity requirement is not satisfied by conclusory allegations that certain statements were fraudulent; it requires that a complaint plead facts giving rise to an inference of fraud." *Dixon*, 2015 WL 12915671, at *3 (citation omitted). "Failure to satisfy Rule 9(b) is a ground for dismissal of a complaint." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005). To sufficiently state misrepresentation claims, Plaintiff must allege: (1) precisely what statements were made in what documents or oral representations or what omissions were made, (2) the time and place of each such statement and the person responsible for making (or not making) it, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud. *Sanchez v. Team Health, LLC*, No. 18-CV-21174, 2020 WL 12188439, at *3 (S.D. Fla. May 18, 2020).

Although Plaintiff describes generally her alleged interaction with Walmart, "[i]n recounting these experiences and interactions, Plaintiff[] omit[s] the 'who, what, when, where, and how' of [Walmart's] alleged misconduct." *Jackson v. Anheuser-Busch InBev SA/NV, LLC*, No. 20-cv-23392, 2021 WL 3666312, at *12 (S.D. Fla. Aug. 18, 2021). Plaintiff's claims revolve around alleged misrepresentations on the Product's label when she purchased the Product at Walmart's stores, but those purchases are not specifically alleged. As an initial matter, Plaintiff's FDUTPA and false and misleading advertising claims only incorporate paragraphs 1-34 into the claims, Compl. ¶¶ 100,

111, rendering them devoid of any allegations whatsoever regarding Plaintiff's purchases, including the where and when, *see id.* ¶¶ 100-110 (Count I), *id.* ¶¶ 111-119 (Count II). These claims, then, merely reciting their elements, are deficient.

Regarding the fraud claim, which also only incorporates paragraphs 1-34, although Plaintiff attempts to walk through the "who, what, when, where, and how," she does so by reciting the basic claim elements without any specifics. *Id.* ¶¶ 120-135. For "when," she only states that Walmart "made these material misrepresentations. . . during the applicable class period." *Id.* ¶ 130. For the "where," Plaintiff only states that the misrepresentations were made on the packaging, without specifying where she saw the alleged misrepresentations. *Id.* ¶ 131. These conclusory and non-specific allegations that Walmart could have made the purported misrepresentations to Plaintiff at anytime and anyplace, do not satisfy Rule 9(b).

Even if the Court were to look to the unincorporated allegations, Plaintiff states in a generic fashion that she purchased the Product "at Walmart locations in Hillsborough County, and/or other areas," but this vague allegation does not provide requisite details as to the "where." *Id.* ¶ 88. As for "when" Walmart made the statement, Plaintiff merely states that she purchased the Product from October 2019 to October 2023, without even attempting to quantify the number of times she purchased the Product or the rate at which she purchased the Product, let alone the specific dates. *Id.* Providing a four-year period in which one or more purchases may have been made, especially considering the number of Walmart products sold every day, is insufficient. Plaintiff also fails to provide even a ballpark estimate of what

Walmart obtained from the alleged fraud, stating that she purchased an undetermined quantity of the Product "at or exceeding [$4.99 for 5.5 oz (156 g)]." *Id.* ¶¶ 50, 90. This renders it impossible for Walmart to assess its purported liability. These general allegations are plainly insufficient to satisfy the heightened pleading standards of Rule 9(b). *See Dixon*, 2015 WL 12915671, at *4 (Rule 9(b) dismissal proper where claims lacked time and location of defendant's alleged misrepresentations).

"[B]are allegation[s] of reliance on alleged misrepresentations. . ., bereft of any additional detail, will not suffice under Rule 9(b)." *Jackson*, 2021 WL 3666312, at *16. Plaintiff does just that in simply alleging that she "read and relied on the front label" on the Product. Compl. ¶¶ 82, 106, 113. She does not explain how the label misled her, nor can she because in reading the front label she would know exactly what is meant by "Reef Friendly" as indicated by the asterisk. The allegations that, in general, consumers have a "growing . . . awareness of harm caused to [coral reefs]" does not support the proposition that Plaintiff herself relied on the Product's label statements when purchasing the Product.[12] *Id.* ¶ 28; *see D.H.G. Props. v. Ginn Cos., LLC*, No. 09-cv-735-J-34, 2010 WL 5584464, at *6 (M.D. Fla. Sept. 28, 2010) (Rule 9(b) not met where "very few allegations actually purport to describe facts or events relating to Plaintiff, or Plaintiff's purchase of the property at issue."). And, although Plaintiff may be "aware of how coral reefs are incredible environments and should be protected" and "seeks to purchase products which have a reduced environmental impact relative to

---

[12] Similarly, alleging, without support, that the Equate brand has a household name reputation that justifies her reliance on the label, does not make it so. Compl. ¶¶ 70-80.

other products," this general preference and personal expectation does not support that in purchasing the Product, she relied on the label statements or was misled by them. Compl. ¶¶ 86-87. Therefore, because these claims are not alleged with sufficient particularity, dismissal under Rule 9(b) is appropriate. *See Sol. Z v. Alma Lasers, Inc.*, No. 11-cv-21396, 2012 WL 13012765, at *3-4 (S.D. Fla. Jan. 25, 2012) (dismissing FDUTPA, false and misleading advertising, and fraud claims for failure to "set forth 'specifically when, where, by whom, or specifically what the representation was'").

## C. Plaintiff Fails to State a Claim Under FDUTPA (Count I), for False and Misleading Advertising (Count II), and for Fraud (Count III).

Putting aside standing and pleading issues, Plaintiff's claims[13] are fatally deficient because Plaintiff: (a) failed to allege a deceptive or unfair practice or misrepresentation, (b) failed to allege reasonable reliance, (c) cannot support actual damages, and (d) failed to adequately allege intent.

### 1. Plaintiff Cannot Allege an Unfair or Deceptive Trade Practice or Misrepresentation.

To state claims for false and misleading advertising and fraud, Plaintiff must allege "the representor made a misrepresentation of a material fact." *Hazelitt*, 2023 WL 4763217, at *3; *Zarrella*, 755 F. Supp. 2d at 1224. Similarly, an essential element of a FDUTPA claim is an alleged "deceptive or unfair practice." *E.g., Parr v. Maesbury*

---

[13] While Walmart specifically addresses some of these claims' elements that are deficient as a matter of law, Plaintiff has not sufficiently pled any of these claims' elements, instead relying entirely on conclusory allegations, for which reason these claims should be dismissed. *See Hazelitt v. Royal Caribbean Curises, Ltd.*, No. 23-CV-21014, 2023 WL 4763217, at *3 (S.D. Fla. July 26, 2023) (elements of false and misleading advertising claim); *Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218, 1224 (S.D. Fla. 2010) (elements of fraud claim).

*Home, Inc.*, No. 09-CV-1268, 2009 WL 5171770, at *7 (M.D. Fla. Dec. 22, 2009). This element is satisfied by alleging a *per se* deceptive or unfair act by asserting a violation of a statute or regulation "which proscribes . . . unfair, deceptive, or unconscionable acts or practices." Fla. Stat. § 501.203(3)(a), (c); *see Parr*, 2009 WL 5171770, at *7. However, simply citing a rule or statute, without showing it was violated, is insufficient. *See Blair v. Wachovia Mortg. Corp.*, No. 11-CV-566, 2012 WL 868878, at *3 (M.D. Fla. Mar. 14, 2012). Indeed, a plaintiff must plead a factual basis to conclude a violation of the rule or statute occurred. *Id.*

Plaintiff attempts to allege a *per se* violation based on the FFDCA, adopted through the DCA, and accompanying regulations, which provide "standards for what companies could tell the public about over-the-counter . . . drugs." Compl. ¶¶ 46-48. Plaintiff asserts that under this framework, a sunscreen is "misbranded" "[i]f its labeling is in any way false or misleading." *Id.* ¶ 48 (citing Fla. Stat. § 499.007(1); 21 U.S.C. § 352(a)(1)). She claims the Product is misleading because it says it is "'Reef Friendly' even though its active and inactive ingredients are harmful to coral reefs." Compl. ¶ 49. She does not state how this is so, however, and conclusively alleges that Walmart violated these statutes simply because avobenzone, homosalate, octisalate, and octocrylene are included in the Product. *Id.* ¶ 103.

In support of her argument, Plaintiff asserts that "reef friendly" sunscreens would be "not harmful to coral reefs." *See* Compl. ¶ 38. Apart from this, Plaintiff's

only cited source[14] that supports that avobenzone, octocrylene, octisalate, and homosalate should not be included in a sunscreen labeled "Reef Friendly" is the "Reef Safe Sunscreen Buying Guide" by "Snorkel Around the World." *Id.* ¶ 31-33. An unsubstantiated assertion and a single buying guide are insufficient to support a claim that the Product is mislabeled as "Reef Friendly."

To be sure, "Reef Friendly" is a subjective term without any defined meaning and, therefore, cannot be misleading. *See Jackson*, 2021 WL 3666312, at *15. In *Jackson*, Judge Bloom found that the plaintiff failed to show that "craft beer" was a *per se* deceptive misrepresentation. *Id.* Plaintiff asserted that Defendant's beer did not meet the National Brewer's Association's definition of "craft beer," rendering the inclusion of "craft beer" on the label deceptive. *Id.* However, the court noted that "the National Brewer's Association's definition of craft beer is but one definition of a term that is otherwise widely used and well known in day-to-day conversation." *Id.* Further, what an individual may think qualifies as "craft" beer is "necessarily . . . subjective . . . , depending on the individual's tastes and interests." *Id.* Because "craft" beer had multiple subjective definitions, the court found that it was not a *per se* deceptive misrepresentation and dismissed the FDUTPA claim. *Id.*

Similarly, here, Plaintiff merely alleges that the Product's "Reef Friendly" term may be inconsistent with one source. But, "reef friendly" is a necessarily subjective

---

[14] In another case filed by Sheehan in New York, the Court found that a "vague reference to recent reports" without identifying or attaching them, as occurred here, were "bare and conclusory allegations" that could not support the claims. *Brownell v. Starbucks Coffee Co.*, No. 5:22-CV-01199, 2023 WL 4489494, at *5 (N.D.N.Y. July 12, 2023) (cleaned up).

term—which is further highlighted by the fact that the sunscreen label itself defines "Reef Friendly" as "Formula is compliant with HI SB2571." *See infra* Section IV.C.2. Thus, due to multiple possible definitions of "Reef Friendly," this phrase cannot be a misrepresentation, and Plaintiff's claims should be dismissed.

Plaintiff cannot indeed show that any regulation was violated by Walmart because no regulation or statute prevents labeling a sunscreen as "Reef Friendly" or similar if it contains avobenzone, homosalate, octisalate, and octocrylene. Per 21 USC § 360fff, the ingredients in sunscreen must be labeled in accordance with the final sunscreen order in effect, an administrative order promulgated by the FDA. A sunscreen product is "GRASE and is not misbranded if marketed in accordance with such order."[15] 21 USC § 360fff(2)(A). The current order only requires that avobenzone, homosalate, octisalate, and octocrylene be labeled as active ingredients on the back of the Product packaging. *See* Over-the-Counter Monograph M020: Sunscreen Drug Products for Over-the Counter Human Use, U.S. Food and Drug Administration, Final Admin. Order OTC000006 (posted Sept. 24, 2021); Compl. ¶ 38. No additional treatment is required under Federal or Florida law. Because the Product accurately lists avobenzone, homosalate, octisalate, and octocrylene as active ingredients, the Product is not misbranded per 21 USC § 360fff.

But, even if Plaintiff could allege a FFDCA violation (she cannot), the "FDCA

---

[15] "'GRASE' means generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling of a drug." 21 USC § 360fff(3).

lacks a private right of action and therefore [Plaintiff] cannot rely on it for purposes of asserting a state-law consumer claim." *Verzani v. Costco Wholesale Corp.*, No. 09-CV-2117, 2010 WL 3911499, at *3 (S.D.N.Y. Sept. 28, 2010). Indeed, Wright and Sheehan's "persistent allegations that [Walmart's labeling] violates the FDCA and [related regulations on labeling] . . . indicates that [their] true purpose is to privately enforce alleged violations of the FDCA, rather than to bring a claim for unfair and deceptive business practices." *Id.* Plaintiff's claims should be dismissed on this independent ground. *Birmingham v. Walgreen Co.*, No. 12-60922-Civ, 2014 WL 12479929, at *3 (S.D. Fla. Jan. 3, 2014) (dismissing FDUTPA claim where "in substance (even if not in form) [it was] a claim for violating the FDCA").

Because avobenzone, homosalate, octisalate, and octocrylene are properly disclosed on the Product's packaging, "Reef Friendly" does not constitute an unfair or deceptive trade practice or a misrepresentation, and the Complaint should be dismissed. *See Cummings v. Growers*, No. 1:22-CV-141, 2023 WL 3487005, at *6 (N.D. Fla. May 15, 2023) (dismissing Sheehan's FDUTPA and fraud claims for failure to "plausibly allege any misrepresentation").

### 2. Plaintiff Failed to Allege a Reasonable Person Would Be Deceived or Misled.

Plaintiff's FDUTPA and false and misleading advertising claims further fail because she cannot show that the alleged misrepresentations "would have deceived an objectively reasonable person." *Hitchcock v. Scipione*, No. 13-CV-2581, 2013 WL 6184037, at *1 (M.D. Fla. Nov. 25, 2013); *Sol. Z v. Alma Lasers, Inc.*, No. 11-cv-21396-

CIV, 2013 WL 12246356, at *11 (S.D. Fla. Jan. 22, 2013) (dismissing FDUTPA and false and misleading advertising claims because reliance on alleged misrepresentations was unreasonable). "Deceptive advertising claims under state consumer protection statutes should take into account all the information available to consumers and the context in which that information is provided and used." *Piescik v. CVS Pharmacy, Inc.*, 576 F. Supp. 3d 1125, 1132 (S.D. Fla. 2021) (cleaned up). And, "where Plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations or labels or other advertising, dismissal on the pleadings may well be justified." *Id.*

Judge Middlebrooks addressed a similar situation—where an asterisk clearly disclosed the meaning of a term on a product's label—in *Piescik*, a case filed by Wright. The plaintiff alleged that a hand sanitizer label was deceptive because it stated that it "kill[s] 99.99% of germs*" but did "not actually kill 99.99% of *all* germs." *Id.* at 1128. The defendant argued that this belief was objectively unreasonable due to "the asterisk and label on the back of the product stating that it is 'effective at eliminating 99.99% of many common harmful germs and bacteria in as little as 15 seconds.'" *Id.* at 1132. Among other reasons, the court found that "a reasonable consumer would not be expected to ignore the asterisk and the information it leads to," and such a disclosure can "rebut a claim of deception." *Id.* at 1133. Because the hand sanitizer labeling contained "accurate information . . . [and] contribute[d] to the implausibility that reasonable consumers would be deceived by some other information or assumption," the FDUTPA claim failed. *Id.* at 1134.

Here, "Reef Friendly" is followed by an asterisk directing the consumer to the

bottom of the Product's package. That asterisk states that "Reef Friendly" means "Formula is compliant with HI SB2571."  In 2018, Hawaii passed HI SB2571, a law purporting to outlaw certain sunscreens in Hawaii that were harmful to the marine environment. *See* H.R.S. § 342D-21 (codifying HI SB2571). Specifically, HI SB2571 declared that sunscreens containing oxybenzone and octinoxate were harmful to coral reefs, with no mention of avobenzone, homosalate, octisalate, and octocrylene. Thus, "Reef Friendly" as stated on the Product's packaging means that the Product does not contain oxybenzone and octinoxate, which is accurate.

As in *Piescik*, an asterisk clearly discloses what the label "Reef Friendly" means and dispels any possibility that a reasonable consumer would be deceived. The materials Plaintiff refers to regarding the potential danger of avobenzone, homosalate, octisalate, and octocrylene do not alter this conclusion, since the packaging clearly discloses what "Reef Friendly" means. Compl. ¶¶ 30-37. Even if the labeling did not disclose what "Reef Friendly" means, mere puffery cannot form the basis for a FDUTPA or false and misleading advertising claim. *See Perret v. Wyndham Vacation Resorts, Inc.*, 889 F. Supp. 2d 1333, 1342 (S.D. Fla. 2012) (finding puffery insufficient to support a FDUTPA claim); *Jackson*, 2021 WL 3666312, at *15 ("Made in Miami" constituted "puffery," rather than a statement of fact that could deceive a reasonable consumer).

Because Plaintiff fails to show that a reasonable consumer would have been misled or deceived, the FDUTPA and false and misleading advertising claims should be dismissed. *See Cummings*, 2023 WL 3487005, at *4 (dismissing FDUTPA claim filed

by Sheehan when trademark symbol and ingredient list "confirm it is implausible that objectively reasonable consumers would think the almonds were actually smoked").

### 3. Plaintiff Did Not Suffer Actual Damages.

For the false and misleading advertising and fraud claims, Plaintiff must allege injury suffered "in justifiable reliance on the representation." *Hazelitt*, 2023 WL 4763217, at *3; *Zarrella*, 755 F. Supp. 2d at 1224. For a FDUTPA claim, Plaintiff must allege "actual damages," which "are measured according to the [market value difference] of the product . . . in the condition in which it was delivered and its market value in the condition in which it should have been delivered." *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1098 (11th Cir. 2021) (internal quotation omitted). FDUTPA "does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment." *Id.* And, actual damages can only come from a "loss as a result of" the FDUTPA violation. *Marketran, LLC v. Brooklyn Water Enters., Inc.*, No. 16-CV-81019, 2017 WL 1292983, at *3-4 (S.D. Fla. Jan. 31, 2017).

As detailed in Section IV.A, *supra*, just as Plaintiff cannot support an "injury in fact," Plaintiff's conclusory allegations and speculation that she paid "a premium price" are insufficient to support actual damages. *Clear Marine Ventures Ltd. v. Brunswick Corp.*, No. 08-CV-22418, 2010 WL 528477, at *4-5 (S.D. Fla. Feb. 11, 2010) (no damages where alleged change in value was based on "mere speculation"). In *Meyer v. Colavita USA Inc.*, the Southern District of Florida dismissed a similar FDUTPA claim

relying on a study evaluating what qualifies as "extra virgin olive oil." No. 10-61781-CIV, 2011 WL 13216980, at *2-3 (S.D. Fla. Sept. 13, 2011). Plaintiffs alleged that the olive oil did not pass some of the study's tests, attempting to "bolster their allegations [with] anecdotes of adulterated or counterfeit olive oil." *Id.* at *2. Finding the claim wholly defective, the Court dismissed the claim for failure to allege damages:

> For example, Plaintiffs do not plead facts demonstrating that they paid "X" dollars for what they thought was extra virgin olive oil that in fact turned out to be simply virgin olive oil worth "Y" dollars. Rather, Plaintiffs base their lawsuits on unwarranted deductions of fact and conclusory allegations in the hope that discovery will in fact validate the foundation for their claims.

*Id.* at *5.

Similarly, Plaintiff's damages rely only on general speculation. *See supra,* Section IV.A. Plaintiff's statement that she "will produce evidence showing how she and consumers paid more than they otherwise would have paid for the Product" is insufficient and nothing more than wishful thinking for what discovery might uncover. Compl. ¶ 109; *Meyer*, 2011 WL 13216980, at *5. Further, per the Complaint, Plaintiff purchased the Product during a four-year period. Presumably, she was satisfied with the Product during the time she was purchasing it, and she does not allege any adverse health effects from using the Product. Instead, Plaintiff's damages amount to general dissatisfaction and buyer's remorse when she realized that the Product contained avobenzone, homosalate, octisalate, and octocrylene. Because Plaintiff's causes of action seek recovery for "subjective feelings of disappointment," among other reasons, the FDUTPA claim should be dismissed. *See Marrache*, 17 F.4th at 1101.

### 4.  Plaintiff Fails to Allege Intent in Counts II and III.

Plaintiff's false and misleading advertising and fraud claims fail to plead Walmart's intent with sufficient particularity as required for those claims. *Hazelitt*, 2023 WL 4763217, at *3; *Zarrella*, 755 F. Supp. 2d at 1224. Plaintiff's sole allegation regarding intent is conclusory: "Defendant intended for consumers to rely on its false statements and omissions for the purpose of selling the Product." Compl. ¶ 116. This allegation, that Plaintiff made the misrepresentation to sell the Product at a premium, does not pass muster. In *Hawkins v. Coca-Cola Co.*, the court dismissed a fraud claim filed by Sheehan for failure to plead scienter. 654 F. Supp. 3d 290, 309 (S.D.N.Y. 2023). The Court explained that while scienter may be pled "generally," "plaintiff must still allege facts that give rise to a *strong inference* of fraudulent intent." *Id.* Allegations of "general profit motive"—that "Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct" and that "Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations"—amounted to insufficient general, conclusory allegations, and the claim was dismissed. *Id.* In this case, the Court should likewise dismiss the claims for failure to allege intent.[16] *Cummings*, 2023 WL 3487005, at *5 (dismissing claim filed by Sheehan for failure to "plausibly allege that [the defendant] intended to induce reliance on a false representation").

---

[16] The allegation that Walmart knew "almost all consumers value protecting the environment and would pay more for such products" based on supposed "research" is unsupported and similarly insufficient. Compl. ¶ 126.

## V.   CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

WHEREFORE, Walmart respectfully requests that the Court enter an order: (1) granting this Motion to Dismiss and dismissing all counts with prejudice; (2) awarding Walmart attorneys' fees under Fla. Stat. § 501.2105; and (3) granting any other relief deemed just and proper.

Respectfully submitted,                              Dated: March 29, 2024

By: _/s/ Evelyn Cobos_
EVELYN COBOS                                     RICK L. SHACKELFORD
Florida Bar No. 92310                            California Bar No. 151262
cobose@gtlaw.com                                 shackelfordr@gtlaw.com
EMILEY PAGRABS                                   _Pro Hac Vice forthcoming_
Florida Bar No. 1030834                          **GREENBERG TRAURIG, LLP**
pagrabse@gtlaw.com                               1840 Century Park East, 19th Floor
**GREENBERG TRAURIG, P.A.**                      Los Angeles, California 90067
333 SE 2nd Avenue, Suite 4400                    Telephone: (310) 586-7700
Miami, Florida 33131                             Facsimile:  (310) 586-7800
Telephone:  305.579.0500
Facsimile:  305.579.0717                         _Attorneys for Defendant Walmart Inc._

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), counsel for Walmart conferred with Plaintiff's counsel on March 28, 2024, regarding this Motion.  Plaintiff opposes the Motion.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 29, 2024, I caused the foregoing to be filed and uploaded to the Court's CM/ECF system which, in turn, provided notice to all counsel of record.

_/s/ Evelyn Cobos_
_EVELYN COBOS_